# F. U. STEARNS & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13135.   Promulgated December 12, 1928.

*Herbert C. Smyth, Jr., Esq.*, for the petitioner.
*Maxwell E. McDowell, Esq.*, for the respondent.

OPINION.

Phillips: The contract here in question was for the exclusive sale of all woven fabrics manufactured by the Renfrew Manufacturing Co. Prior to the organization of petitioner the contract for the exclusive sale of such merchandise had been held by Frank U. Stearns, who was associated with Converse & Co., dry goods commission merchants or factors of New York. In 1910 Stearns became dissatisfied with his arrangement with Converse & Co., and on December 16, 1910, entered into a new contract with the Renfrew Manufacturing Co. for the exclusive sale of their merchandise, which contract he

assigned to petitioner upon its organization January 1, 1911, for its common stock in the amount of $199,500 par value.

Petitioner claims the value of the contract assigned to it was in excess of $199,500 and asks that it be included in its invested capital at its cash value. It introduced evidence of the gross commissions received by Converse & Co. from the exclusive sale of similar merchandise during the five years preceding its organization. There is no evidence as to the net commissions earned by Converse & Co. under their contract and we are unable to determine what such net commissions were. It is urged that they were comparative to the net earnings of petitioner during the years immediately following its organization. This does not necessarily follow from the fact that they were both exclusive contracts for the sale of similar goods. The conditions were different. They were executed at different times, by different parties under different selling and market conditions, and did not require the same services. Converse & Co. acted as factors as well as selling agents and received a commission of 4½ per cent, while petitioner acted only as selling agent and received a commission of 3⅜ per cent. The record fails to show any basis on which the gross commissions earned by Converse & Co. may be used to measure the value of the contract acquired by petitioner, nor do the earnings of the petitioner during the five years immediately following its organization indicate that the contract had a market value. After eliminating its income from other sources, petitioner's net income from the contract in question from 1911 to 1915, inclusive, was $7,063.07; an average of $1,412.61 per year. This was at most no more than a fair return on the capital stock which petitioner had issued for cash. We are unable, on the basis of this evidence, to give any cash value to the contract here in question for invested capital purposes.

It will be noted that the contract provided that it would continue in force for two years and thereafter would be renewed from year to year, but cancelable at the option of either party by notice given six months before the expiration of any calendar year. Such a provision would militate against the assignment of any substantial cash value to the contract for invested capital purposes.

There is some opinion evidence as to value, but such testimony is clearly based upon a knowledge of the earnings of petitioner several years later and is not acceptable as evidence of the value of the contract on June 1, 1911.

The respondent has included in invested capital the par value of the stock issued for cash. The record does not bring to our attention any abnormal conditions affecting the capital or income of

694

petitioner. We conclude that petitioner is not entitled to have its tax computed under section 328 of the Revenue Act of 1918 by reason of any abnormal conditions affecting its income or capital.

*Decision will be entered for the respondent.*